**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| George Maskey, ) | No. CV06-02209-PHX-NVW |
| Plaintiff, ) | **ORDER** |
| vs. ) |  |
| Linda S. McMahon, Acting Commissioner ) of Social Security, ) |  |
| Defendant. ) |  |

Pending before the court are cross-motions for summary judgment relating to Plaintiff's application for benefits under Titles II and XVI of the Social Security Act, 42 U.S.C §§ 423, 1381.  (Doc. ## 11, 15.)

Plaintiff, a middle-aged male with a general equivalency high school education who previously worked as a forklift driver, applied for Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI") on May 7, 2003.  (Tr. 55.)  The Social Security Administration denied Plaintiff's application initially and on reconsideration. (Tr. 29-32; 34-37.)  Plaintiff next requested a hearing before an administrative law judge ("ALJ").  After that hearing was completed and the record closed, ALJ Ronald Dickinson determined that Plaintiff was not disabled within the meaning of the Social Security Act, and denied Plaintiff's application for DIB and SSI.  (Tr 17-25.)  The June 13, 2006 decision of the ALJ became the final decision of the Acting Commissioner of Social Security on July 28, 2006, when the Appeals Council denied Plaintiff's request for review.  (Tr. 9-11.)  The court has

jurisdiction to consider Plaintiff's timely appeal of that final decision pursuant to sections 405(g) and 1383(c)(3) of the Social Security Act, 42 United States Code.

In denying Plaintiff's application, Judge Dickinson expressly rejected the medical opinions of Mr. Maskey's treating physician and his assistant. The ALJ explained this rejection by observing that the primary care-givers' conclusions as to the extent and severity of Plaintiff's physical and psychological impairments were unsupported by medical evidence and incongruent with the clinical evaluations of every other psychologist and physician in this matter. (*Id*. at 23.) Plaintiff assails this explanation as insufficient as a matter of law, and he urges the court to vacate the decision of the ALJ and grant disability benefits through October 26, 2004. (Doc. # 13 at 3.) Plaintiff also contends, in the alternative, that the ALJ's refusal to award a closed period of disability benefits is unsupported by the evidence. In Plaintiff's view, Judge Dickinson "should have considered and granted a period of disability through August 2004 at the minimum" because the "medical evidence is without conflict through August of 2004" that Mr. Maskey was disabled. (*Id*. at 4.) The ALJ's denial of Title II and Title XVI benefits is affirmed for the reasons set forth below.

## I. Background

Plaintiff's alleged disability began on September 1, 1999, and has both physical and psychological components. His physical complaints include chronic lower back pain; chronic migraine headaches; otitis media (infection of the middle ear); otitis externa (infection of the ear canal); poor hearing; hypothyroidism; chronic sinus infections; and neck pain. (Tr. 68; 117.) Plaintiff's psychological symptoms include severe depression, auditory hallucinations, nightmares and insomnia. (*Id*.) These conditions are well documented, and their impact upon the quality of Plaintiff's life is uncontroverted. (Tr. 620-21.) What is disputed, however, is whether Plaintiff's physical maladies are as severe as he proclaims them to be, and whether he has brought his psychological problems upon himself by abusing non-prescription drugs.

Plaintiff regularly uses crystal methamphetamine, and he previously abused alcohol, marijuana, acid, and cocaine. (Tr. 297; 619-20.) The administrative record is replete with

evidence of Mr. Maskey's ongoing chemical dependency. (*E.g.*, Tr. 304-07 (Plaintiff admitted to using amphetamines approximately two to three times per week, against the advice of his treating physician and despite attending drug treatment programs in 1997 and 2004).) A claimant with a drug addiction may be precluded from receiving disability benefits and Supplemental Income under federal law. Section 423(d)(2)(C) of the Social Security Act provides that "an individual shall not be considered to be disabled for purposes of this subchapter if . . . drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." "[T]he key factor," explains the Acting Commissioner of Social Security, "is whether we would still find you disabled if you stopped using drugs. We will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs and then determine whether any or all of your remaining limitations would be disabling." 20 C.F.R. § 404.1535. Although Plaintiff acknowledges that he has a substance abuse problem, Mr. Maskey contends that his continued use of amphetamines is not a materially contributing factor to his disability. (Tr. 123-24.) Plaintiff bears the burden of proof. *Ball v. Massanari*, 254 F.3d 817, 822 (9th Cir. 2001) (citations omitted) ("[C]laimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination."); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005) (citations omitted) ("[C]laimant carries the initial burden of proving a disability," and the "[f]ailure to prove disability justifies a denial of benefits.").

The ALJ conducted the five-step disability algorithm prescribed by 20 C.F.R. §§ 404.1620(a)-(f), 416.920(a)-(f), applied the drug addiction preclusion at 42 U.S.C. 423(d)(2)(C), and explained the denial of benefits in admirable detail. Plaintiff was first adjudged disabled without separating his drug-related impairments from his unrelated physical and mental impairments. (Tr. 22.) The ALJ next determined whether Plaintiff would be disabled even if he ceased using crystal methamphetamine and other narcotics. 20 C.F.R. § 404.1535; *see Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). The ALJ found that Plaintiff is not disabled when his substance abuse is not considered. (Tr. 24.)

After "considering all the evidence," Judge Dickinson concluded that "*without* polysubstance abuse, the claimant has the residual functional capacity to perform light work with restrictions." (Tr. 22) (emphasis in original). When he is not using drugs, Mr. Maskey can perform "simple unskilled work" not involving climbing, crawling, crouching squatting, kneeling, or fine or acute hearing, such as packing and filling, production or inspection work. (Tr. at 23-24.) Because "the claimant's polysubstance abuse disorder is material to the determination of disability," Plaintiff "is ineligible for the Title II benefits and Title XVI payments for which he has applied." (*Id.*) In so ruling, Judge Dickinson expressly rejected the "medical source statement of mental abilities from Dawn Duff, the physician assistant who works with the claimant's primary care physician, Dr. Cunningham," as well as the "residual functional capacity opinion" of Dr. Cunningham himself. (Tr. 23.) The ALJ also found Plaintiff's complaints of severe physical impairment to be unsupported by the medical evidence, and his allegations of excess pain incredible. (Tr. 19.)

## II.   Standard of Review

The court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). In its review, the court "may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citations omitted); *see Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995) (citations omitted). Such evidence is "more than a scintilla" but "less than a preponderance." *Smolen*, 80 F.3d at 1279 (citations omitted). "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.* at 954 (citations omitted).

### III.     Rejecting the Opinion of the Primary Care Providers

It is well settled that an ALJ must provide "clear and convincing" or "specific and legitimate" reasons for rejecting a treating physician's opinion, even on issues such as residual functional capacity that are purportedly reserved to the Commissioner. *E.g.*, *Morgan v. Apfel*, 169 F.3d 595, 601 (9th Cir. 1999); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Roberts v. Shalala*, 66 F.3d 179, 183-84 (9th Cir. 1995); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988); *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). Where, as here, a treating physician's opinion is controverted by other medical opinions in the record, the ALJ's decision to discredit the treating physician's opinion must be supported by "specific and legitimate reasons" based on substantial evidence in the record. *Morgan*, 169 F.3d at 600; *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Cotton*, 799 F.2d at 1408. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citing *Cotton*, 799 F.2d at 1408). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755.

The record shows that Dawn Duff, physician assistant, and Doug Cunningham, D.O., provided care to Plaintiff for "several years" at Pueblo Family Physicians. (Doc. # 12 at 2.) The gravamen of Plaintiff's appeal is Judge Dickinson's failure to defer to the medical opinions of these experts, which generally corroborate the physical and psychological components of Mr. Maskey's alleged disability. (Tr. 266-78.) Plaintiff contends that Judge Dickinson erred by "not cit[ing] any substantial evidence nor any evidence at all that is in conflict" with the opinions of Mr. Maskey's treating physician and his assistant. (Doc. # 13 at 4.) This argument is without merit.

1 **A.     Physical Disability**

2       **1.     The Primary Care Providers**

3       On June 10, 2004, physician assistant Duff performed a Medical Assessment of Ability to do Work-Related Activities and concluded that, due to Plaintiff's chronic back pain, Mr. Maskey could lift less than ten pounds, sit for less than six hours, and stand or walk for at least two hours during an eight-hour workday. (Tr. 262-63.) Ms. Duff's assessment references an MRI of Plaintiff's lumbar spine that was performed on April 12, 2004. (Tr. 262.) The report describes, among other things, a small disc protrusion abutting a nerve root and mild degenerative disc changes. (Tr. 257.) Several months later, on October 26, 2004, Dr. Cunningham also evaluated Mr. Maskey's physical condition and concluded that he had the residual functional capacity to sit, stand, walk for only two hours at a time during an eight-hour workday, and that he could occasionally lift up to five pounds. (Tr. 492-94.) Dr. Cunningham's report does not specifically explain the clinical basis for his conclusions.

      Plaintiff's "5-year history of chronic, daily, headaches which last 24 hours" prompted Dr. Cunningham to refer his patient to Dr. Victor Salazar-Calderon, M.D., a neurologist, in June 2004. (Tr. 532.) Dr. Salazar-Calderon agreed to treat Mr. Maskey, but he noted that Plaintiff's previous neurologist "did not want to see him again because he . . . still uses crystal [methamphetamine]." (*Id*.) The specialist performed a battery of neurological tests over a number of visit, all of which were negative. (Tr. 526-532.) The neurologist concluded that Plaintiff's "headaches will not improve while he is using crystal." (Tr. 531.) He prescribed Depakote to control–but not to cure–Plaintiff's migraines. During one office visit, the neurologist noted that Plaintiff "had two [headache episodes] when he used methamphetamine," an observation that suggests a direct relationship between Plaintiff's migraines and his drug abuse. (Tr. 527.) With brief interruptions, Plaintiff reported that his headaches were well-controlled in October 2004, January 2005, and March 2006 visits with Dr. Salazar-Calderon. (Tr. 526-528.)

### 2. The ALJ's Findings

Judge Dickinson expressly rejected the conclusions of Plaintiff's primary care providers as to Mr. Maskey's inability to perform physical work in the national economy, observing that "[n]either the severity nor the extent [of his allegations of physical impairment] is supported by the medical record." (Tr. 19.)

#### i. Chronic Back Pain

The ALJ found that the "claimant's allegations of chronic and disabling back pain . . . are not supported by the minimal abnormal clinical findings and objective evidence in the medical record." (Tr. 20.) A radiologic exam of Plaintiff's spine from March 2006, showed degenerative disc disease with some disc narrowing, but was otherwise unremarkable. (Tr. 579.) Plaintiff's persistent complaints about chronic back pain were sufficient to prompt his primary care providers to order the April 2004 MRI. Yet neither Ms. Duff nor Dr. Cunningham ever referred Plaintiff to a pain clinic, physical therapy, or a neurosurgeon for further evaluation or treatment of his back pain. (Doc. # 17 at 4.) Ms. Duff relied on the results of the MRI to support her extremely reduced functional capacity conclusions. But a State agency physician described the same MRI as showing only a "small" disc protrusion, with no spinal canal stenosis (narrowing of the space within the spinal canal) or foraminal narrowing (compression of the nerves in the spine), complications that might substantiate Plaintiff's allegations of pain. (Tr. 315.) The non-treating physician concluded, in stark contrast to Ms. Duff and Dr. Cunningham, that Plaintiff could occasionally lift up to 20 pounds, frequently lift up to ten pounds, and stand and/or walk for a total of six hours in an eight-hour work day. (Tr. 315.) After weighing this conflicting evidence, the ALJ determined that the record supports the medical assessment of the non-treating physician, rather than that of Plaintiff's primary care providers. The specific and legitimate reasons for rejection provided by the ALJ were based on substantial evidence in the record.

Judge Dickinson further concluded that "the claimant's allegations [of chronic back pain] are not fully credible concerning the severity and extent of his limitations." (Tr. 19.) "Credibility determinations [regarding allegations of excess pain] are the province of the

1  ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). "Once a claimant submits objective medical evidence establishing an impairment that could reasonably be expected to cause *some pain*, it is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings." *Id.* at 601 (emphasis in original) (citation and internal quotation omitted). "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision"; he must "convincingly justify his rejection of the claimant's excess pain testimony." *Id.* at 602 (citation and internal quotations omitted). The ALJ may satisfy this requirement by, among other means, evaluating testimony about the claimant's daily activities for inconsistences. *Id.* at 603. Plaintiff has the burden of proving that "his pain prevents him from returning to his former job." *Id.* at 604.

In this case, the record shows that Plaintiff frequently rode his bicycle not only to his numerous medical appointments, but also to the local Circle K convenience store and to other neighborhood destinations. (Tr. 306.) This is Plaintiff's primary mode of transportation; he bicycles about five times per week. (*Id.*) In August 2004, Plaintiff reported walking his dog around the block on a daily basis, mowing his lawn at least once a week, and pulling weeds about one time per month. (*Id.*) The ALJ noted that Plaintiff "played basketball and was very [active]" during his inpatient drug treatment program, and he also observed that Plaintiff does not walk with an antalgic gait (a posture assumed to avoid or lessen pain). (Tr. 20). There is a suggestion that Plaintiff was less than forthright in describing his activity level to his consultative examiner. The psychologist noticed that "the condition of [Plaintiff's] hands (dirty fingernails, griminess and apparent calluses) is not consistent with his report of [minimal] daily activities." (Tr. 307.)  These specific and legitimate findings are inconsistent with the severe back pain alleged by Plaintiff. The ALJ was fully justified in discrediting Plaintiff's excess pain testimony.

### ii.   Chronic Headaches

Judge Dickinson also found that Plaintiff's allegations of "having disabling pain and limitations due to chronic headaches are not fully supported in the record." (Tr. 19.) The

1  ALJ's conclusion was founded primarily on medical records prepared by Dr. Salazar-
2  Calderon, Plaintiff's treating neurologist. As set forth above, the specialist performed a
3  battery of neurological exams on Plaintiff over the course of his multi-year treatment, all of
4  which were negative. Dr. Salazar-Calderon's notes reveal that Plaintiff's headaches were,
5  with rare exceptions, well controlled by Depakote, a prescription drug. The headaches
6  returned only when Plaintiff resumed using crystal methamphetamine. The neurologist's
7  conclusion that Plaintiff's "headaches will not improve while he is using crystal" is
8  suggestive of a direct relationship between Mr. Maskey's drug use and his migraines. (Tr.
9  531.)  If drug addiction is a "contributing factor material to the Commissioner's
10 determination that the individual is disabled," then that person is not legally disabled under
11 the Act. 42 U.S.C. § 423(d)(2)(C). The ALJ provided specific and legitimate reasons for
12 rejecting Plaintiff's allegation of disabling chronic headaches. His conclusions are based on
13 substantial evidence.

14 Plaintiff does not challenge the ALJ's rejection of Mr. Maskey's remaining allegations
15 of physical disability–chronic ear infections causing a disabling hearing problem,
16 hypothyroidism, neck pain, and chronic sinus infections. The court notes, however, that the
17 ALJ's rejection of each of these conditions finds substantial evidentiary support. (Tr. 19-20.)

18      **B.**    **Psychological Disability**

19           **1.**    **The Primary Care Providers**

20 On July 18, 2003, physician assistant Duff opined that Plaintiff's "dementia"
21 amounted to a "mental incapacity which prevents him . . . from performing any substantially
22 gainful employment." (Tr. 280.) On June 10, 2004, Ms. Duff similarly concluded that
23 Plaintiff's mental functions were between "seriously limited" and "poor." (Tr. 260-61.)
24 Although aware of Mr. Maskey's long history of amphetamine use, (Tr. 268), Ms. Duff made
25 no mention of her patient's drug addiction in either her July 18, 2003 or June 10, 2004
26 assessments of Plaintiff's mental capacity. Dr. Cunningham never evaluated Plaintiff's
27 mental impairments, nor did he consider the effect of Plaintiff's amphetamine use upon his
28 ability to perform work-related activities. Plaintiff has directed the court's attention to no

1 other evidence from his treating physician, or from his physician's assistant, relating to his
2 mental impairments.

### 2. The ALJ's Findings

4 The ALJ determined that Plaintiff suffers from substance induced paranoia, substance
5 induced anxiety disorder, probable borderline intellectual functioning, a personality disorder,
6 and a polysubstance abuse disorder. (Tr. 20.) The ALJ concluded that a finding of disability
7 was justified when Plaintiff's polysubstance abuse is included in the five-step analysis. (Tr.
8 22.) When combined with Plaintiff's physical impairments, Plaintiff's psychological
9 impairments–including those related to his use of crystal methamphetamine–effectively
10 precluded Mr. Maskey from sustaining work on a regular and consistent basis, eight hours
11 a day, five days a week even at the sedentary exertional level. (Tr. 21.) But *without*
12 considering Plaintiff's polysubstance abuse, a finding of disability was not justified. When
13 he is not using drugs, the ALJ found that Mr. Maskey has the residual functional capacity to
14 perform light exertional work, with some restrictions. (*Id.*)

15 The Social Security Act and regulations required Judge Dickinson to determine
16 whether Plaintiff's drug addiction is a "material contributing factor" to his alleged disability.
17 42 U.S.C. § 423 (d)(2)(C); 20 C.F.R. § 404.1535. The medical records and mental
18 impairment assessments completed by Ms. Duff and her supervisor, Dr. Cunningham, were
19 unavailing. Neither primary care provider differentiated between the mental impairment due
20 to Plaintiff's use of crystal methamphetamine, and the mental impairment caused by
21 unrelated psychological disorders, such as Plaintiff's probable borderline intellectual
22 functioning. Even if Ms. Duff and Dr. Cunningham had differentiated between Plaintiff's
23 drug-induced impairments and his underlying psychological conditions, which they did not,
24 their opinions would not be binding upon the ALJ. This is the wisdom of *Thomas v.*
25 *Barnhart*, in which it was held that "[t]he ALJ need not accept the opinion of any physician,
26 including a treating physician, if that opinion is brief, conclusory, and inadequately supported
27 by clinical findings." 278 F.3d at 957. Judge Dickinson relied on uncontradicted
28 assessments from Plaintiff's non-treating physicians and psychologists to conclude that

1 | Plaintiff's drug addiction is a material contributing factor to his disability. His determination
2 | is supported by substantial evidence.

3 |       On September 3, 2003, psychologist Brent B. Geary, Ph.D., diagnosed Mr. Maskey
4 | with amphetamine abuse, amphetamine-induced anxiety disorder, adjustment disorder with
5 | depressed mood, and mixed personality disorder with sociopathic and paranoid features. (Tr.
6 | 298.)  Dr. Geary stated that Plaintiff acknowledged "that he used amphetamines and
7 | marijuana on multiple occasions during every week." (*Id.*)  Noting that "[i]t is somewhat
8 | difficult to reliably quantify the extent of Mr. Maskey's emotional dysfunction that is
9 | unrelated to his amphetamine abuse or dependence," the psychologist nevertheless ascribed
10 | his "behavioral anomalies" to drug abuse, and concluded that Plaintiff's prognosis "remains
11 | poor as long as [he] uses amphetamines to the extent that he  presently does." (Tr. 298-99.)
12 | Consultative examiner   Elliot D. Salk, Ph.D., also a psychologist, came to a similar
13 | conclusion on August 16, 2004, reporting that all Plaintiff's mental "impairments are likely
14 | secondary to chemical dependency." (Tr. 309.)

15 |       In light of Plaintiff's long history of polysubstance abuse, state agency physician
16 | Larry F. Waldman, Ph.D., opined in September 2003,  that Mr. Maskey's psychological
17 | condition is  primarily the result of his drug use and that, but for the chemical dependency,
18 | he had "[n]o medically determinable impairment" under Social Security regulations. (Tr.
19 | 211, 223.) Finally, in August 2004, state agency physician Jane George, Ph.D., diagnosed
20 | Plaintiff with mixed personality disorder and substance abuse disorder, and opined that his
21 | mental function limitations were mild in the absence of his polysubstance abuse. (Tr. 340.)

22 |       Mr. Maskey's treating physician and assistant did not address the impact of Plaintiff's
23 | use of crystal methamphetamine or any other drug upon his mental impairments. The non-
24 | treating psychologists and non-examining physicians who did differentiate unanimously
25 | concluded that Plaintiff's mental impairments were directly related to his polysubstance
26 | abuse. The ALJ's decision to credit the specific clinical conclusions of Drs. Geary, Salk,
27 | Waldman and George over the more generalized conclusions of Ms. Duff and Dr.
28 |

- 11 -

1  Cunningham is supported by a specific and legitimate rationale and buttressed by substantial
2  evidence.

### IV.    A Closed Period of Benefits is Not Warranted

Plaintiff's alternative ground for vacatur need not detain the court for long.  Mr. Maskey asserts, without citation to supporting authority, that "the ALJ must, at least consider a finite period of disability."  (Doc. # 13 at 2.)  Because "the medical evidence [from Dr. Cunningham and Ms. Duff] is without conflict through August of 2004 that the claimant was unable to sustain employment due to his medical problems," Plaintiff avers that the "ALJ should have considered and granted a period of disability through August of 2004 at the minimum."  (*Id.* at 4.)  This argument is foreclosed by the applicable law.

"If the evidence establishes that a claimant was unable to engage in substantial gainful activity for a continuous period of 12 months, but that by the time a disability determination is made, the claimant is no longer disabled, it is the [Social Security Administration's] policy to establish a closed period of disability."  S.S.L.P § 39.64; 20 C.F.R. §§ 404.131(b)(ii), 404.315(a)(3).  However, Plaintiff bears the burden of demonstrating that he is disabled within the meaning of the Act for the requisite 12-month period.  *Ukolov*, 420 F.3d at 1004; *Ball*, 254 F.3d at 823.  The term "disability" is defined so as to preclude claimants whose addiction to drugs or alcohol is a "contributing material factor" to their condition from collecting Social Security benefits of any kind.  42 U.S.C. § 423(d)(2)(C).  Plaintiff failed to carry his burden of proving that his polysubstance abuse is *not* a material contributing factor to his alleged disability.  Therefore, Mr. Maskey's benefits application was properly denied, whether for a closed period or for any other time frame.

Plaintiff believes that the medical assessments completed by Ms. Duff on July 18, 2003, and June 10, 2004, entitle him to disability benefits through August 2004.  Though Ms. Duff's forms do not explicitly refer to Mr. Maskey's chemical dependency, the medical records upon which the physician's assistant based her opinions are replete with references to Plaintiff's polysubstance abuse.  (Tr. 266-290.)  The ALJ could have concluded on the basis of these records alone that Plaintiff's drug addiction is a contributing material factor

- 12 -

to his disability. But the ALJ had an additional reason for denying Plaintiff benefits for the period between the September 1, 1999 onset date and August 2004, the date Dr. Salk determined that Plaintiff's "impairments are likely secondary to chemical dependency." (Tr. 309.)

On September 3, 2003, examining psychologist Geary, Ph.D., diagnosed Mr. Maskey with amphetamine abuse, amphetamine-induced anxiety disorder, adjustment disorder with depressed mood, and mixed personality disorder with sociopathic and paranoid features. (Tr. 298.) Plaintiff observes, correctly, that the psychologist could "not reliably quantify Mr. Maskey's emotional dysfunction as it related to substance issues." (Doc. # 13 at 3.) But Plaintiff fails to note that Dr. Geary also stated that Plaintiff's "behavioral anomalies" are "associated with addiction to or abuse of [crystal methamphetamine]," and also that Plaintiff's prognosis "remains poor as long as [he] uses amphetamines to the extent that he presently does." (Tr. 298-99.) These observations, especially when coupled with the fact that Plaintiff continued to abuse non-prescription drugs throughout the "closed period" at issue here, were more than sufficient to justify the ALJ in concluding that Plaintiff's drug addiction was a material contributing factor to his disability. The general rule is that "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954 (citations omitted).

The June 13, 2006 decision of the ALJ is supported by substantial evidence. Judge Dickinson provided specific and legitimate reasons for rejecting the generalized conclusions of Dr. Cunningham and Ms. Duff in favor of the more detailed opinions of Plaintiff's non-treating physicians and psychologists. Plaintiff's application for Title II and Title XVI benefits from the September 1, 1999 onset to the present date was properly denied.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment, Doc. # 11, is denied.

1   IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment,
2 Doc. #16, is granted. The clerk is directed to enter judgment in favor of Defendant and that
3 Plaintiff take nothing.  The clerk shall terminate this action.

4   DATED this 12th day of March 2007.

_____
Neil V. Wake
United States District Judge